UNITED STATES of America

v.

Floyd Fitzroy SALMON, Appellant.

No. 91–3073.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 7, 1991.

Decided Nov. 12, 1991.

tortious conduct and another factor were each

sufficient causes of injury); here it is neither.

Mary E. Davis, with whom Christopher M. Davis, Washington, D.C. (appointed by the court) was on brief, for appellant.

Peter R. Zeidenberg, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, and Sylvia L. Gonzalez, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MIKVA, Chief Judge, WILLIAMS and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

In compliance with a plea agreement, Fitzroy Salmon entered a plea of guilty to three counts of distributing cocaine powder (in violation of 21 U.S.C. §§ 841(a)(1) &

841(b)(1)(A)(iii)). In return, the government dismissed the remaining counts of the indictment—three counts of distributing cocaine base or crack (in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C)), and the one count of using a communication facility in connection with a drug trafficking offense (in violation of 21 U.S.C. § 843(b))—and promised not to prosecute him for a firearms offense, for which he had not yet been charged.

■ Plea agreements such as Salmon's, calling for the dismissal of counts, will not necessarily result in a reduced sentence under the Sentencing Guidelines. *See United States v. Dukes*, 936 F.2d 1281, 1282–83 (D.C.Cir.1991). If the dismissed counts entail "relevant conduct" as defined in U.S.S.G. § 1B1.3 (Nov.1990) (Relevant Conduct (Factors that Determine Guideline Range)),* the court will take that conduct into account in determining the base offense level, which in drug trafficking cases depends on the quantity of drugs involved. *Id.* § 2D1.1. In Salmon's sentencing proceedings, the government therefore sought to prove, as "relevant conduct," that Salmon sold crack to a female undercover officer on the three occasions described in the dismissed counts, that on an earlier occasion he converted powder cocaine into crack for her and that he had a large quantity of crack in his possession when he was arrested. Rather than disputing the government's evidence of his crack dealing, Salmon contended that he served a more discriminating clientele interested only in

powder cocaine, and that the undercover officer had entrapped him into selling crack. In the alternative, he requested a downward departure due to his initial reluctance to deal in crack. The district court rejected both arguments and, after using the weight of the crack—a total of 536 grams—to calculate the guideline range, sentenced Salmon to 188 months' imprisonment.

■ Salmon's principal argument on appeal is that the trial court mistakenly placed the entire burden of proving entrapment upon him. The Guidelines shed little light on the subject. The Sentencing Commission originally suggested that the preponderance-of-the-evidence standard should govern all aspects of sentencing, *see* UNITED STATES SENTENCING COMMISSION, PRELIMINARY DRAFT OF SENTENCING GUIDELINES FOR THE UNITED STATES COURTS, 51 Fed.Reg. 35,-080, 35,085 (1986), but later withdrew the suggestion on the theory that "[e]xisting law addressing dispute resolution in the sentencing context remains to be developed fully." UNITED STATES SENTENCING COMMISSION, SUPPLEMENTARY REPORT ON THE INITIAL SENTENCING GUIDELINES AND POLICY STATEMENTS 47 (June 18, 1987). Finding no reason to depart from previous practice, we joined with other courts of appeals, as the Ninth Circuit now has, *United States v. Restrepo*, 946 F.2d 654 (9th Cir.1991) (en banc), in holding that the government bears the burden of proving by a preponderance of the evidence any facts that would en-

---

* Section 1B1.3(a) provides in pertinent part:

[T]he base offense level where the guideline specifies more than one base offense level ... shall be determined on the basis of the following:

(1) all acts and omissions committed or aided and abetted by the defendant or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course

of conduct or common scheme or plan as the offense of conviction;

. . . .

Salmon's "relevant conduct" fell within § 1B1.3(a)(2), making his base offense level dependent not only on the offense of conviction, but also upon any "acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." As Judge Breyer explained, the "guideline relevant [in a drug trafficking] case, § 2D1.1, is a guideline that has many different 'base offense levels,' each correlated with a different amount of drug. . . . A glance at the relevant cross-reference in the 'multiple-count' guideline, § 3D1.2(d), reveals § 2D1.1 listed there as a 'fungible items' crime." *United States v. Blanco*, 888 F.2d 907, 909 (1st Cir.1989) (citation omitted).

hance a defendant's sentence. *United States v. Burke,* 888 F.2d 862, 869 (D.C.Cir. 1989). In *Burke,* we also suggested that "[t]he defendant properly bears the burden of proof under those sections of the Guidelines that define mitigating factors." *Id.* at 869 n. 10 (citations omitted). We have not, however, considered who should bear the burden of proving or disproving an entrapment defense to conduct that would enhance a defendant's sentence.

The government contends that affirmative defenses such as entrapment should be treated like mitigating factors (*see, e.g.,* U.S.S.G. §§ 3B1.2, 3E1.1, 5K2.0), so that once the government has established, by a preponderance of the evidence, that criminal conduct occurred, the defendant should bear a similar burden of proving an excuse or justification for that conduct. While there is some similarity between an affirmative defense and a mitigating circumstance, the government's argument rests on a questionable assumption—that conduct and an entrapment defense to that conduct can be considered independently of each other. They are not treated independently at trial, and we find nothing in the Guidelines to signal a departure from this practice. In defining "relevant conduct," the Guidelines make conduct relevant only if the defendant is "accountable" for it, either by committing the act, aiding or abetting it, or "otherwise." U.S.S.G. § 1B1.3(a)(1). Note 2 of the Commentary to § 1B1.3, emphasizes that the phrase "such acts and omissions" in § 1B1.3(a)(2) incorporates the same standard. In other words, conduct is only relevant if the defendant is accountable for it. Since an affirmative defense absolves a defendant of responsibility or accountability for particular conduct, it follows that affirmative defenses are part of the "relevant conduct" inquiry. Furthermore, since affirmative defenses at sentencing, like defenses at trial, demonstrate that the defendant is not responsible for certain conduct, it makes sense to take the allocation of burdens at trial as a model and fit them into the sentencing context.

■ We have adopted a bifurcated approach to entrapment. To simplify for the purposes of this case, the defendant bears an initial burden of demonstrating inducement; once the defendant meets that burden, the ultimate burden of persuasion shifts to the government to prove predisposition. *See, e.g., United States v. Burkley,* 591 F.2d 903, 911–15 (D.C.Cir.1978), *cert. denied,* 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782 (1979). Inducement is government behavior that would "cause[ ] an unpredisposed person to commit a crime." *United States v. Kelly,* 748 F.2d 691, 697 (D.C.Cir.1984) (citation omitted). Here the district court found no threats, no fraudulent misrepresentations, no solicitation, no improper persuasion that would constitute inducement. Having failed to carry his initial burden in establishing the defense, Salmon presents a nonissue when he protests that the court erroneously placed the burden of showing lack of predisposition upon him. No matter where that burden wound up, the district court's finding that Salmon had not been induced would have led it to reject his entrapment defense.

■ Salmon's fall back position is that the court's finding was clearly erroneous. The undercover officer, he explains, was petite and attractive; she implored him to sell crack to her; and after numerous entreaties he succumbed. Our review of the record, which consists of videotapes, transcripts of audio tapes, the affidavit offered by Mr. Salmon, and the testimony at the sentencing hearing, convinces us that Salmon failed to substantiate his claim that the undercover officer set out to seduce or manipulate him. The district court's conclusion that there was no inducement was not clearly erroneous.

■ Salmon's last effort to impugn his sentence rests on the notion that the district court should have considered a downward departure based upon what he calls "partial entrapment," that is, his initial hesitation to sell crack cocaine. We need not consider whether there is such a thing as a defense of partial entrapment in the sentencing context, or whether Salmon's alleged reluctance might, like an incomplete

defense of coercion or duress (*cf.* U.S.S.G. § 5K2.12), be a proper ground for departure. Compare *United States v. Dickey,* 924 F.2d 836, 839 (9th Cir.1991); *United States v. Streeter,* 907 F.2d 781 (8th Cir. 1990). The district court ruled that even if such a defense were available, Salmon had not displayed sufficient reluctance to warrant a departure and that it would therefore not exercise its discretion to depart downward. Our appellate jurisdiction to review a district court's refusal to depart downward extends to cases in which the court has incorrectly applied the Guidelines or imposed the sentence "in violation of the law." 18 U.S.C. § 3742(a)(1) & (2). This case is within neither category. Discretionary judgments of the sort the court made here are not subject to appellate review. *See United States v. Dukes,* 936 F.2d at 1284; *United States v. Jamison,* 934 F.2d 371, 372 (D.C.Cir.1991); *United States v. Hazel,* 928 F.2d 420, 424 (D.C.Cir.1991); *United States v. Ortez,* 902 F.2d 61, 63–64 (D.C.Cir.1990).

*Affirmed.*