UNITED STATES of America,
Appellee,

v.

Harry A. GINYARD, a/k/a Brett Scott, a/k/a H. A. Ginyard, a/k/a Brett S. Ginyard, a/k/a Brett Scott Ginyard, a/k/a Brett Ginyard, a/k/a Brett D. Scott, a/k/a Brett Douglas Scott, Appellant.

No. 99–3113.

United States Court of Appeals, District of Columbia Circuit.

Argued March 27, 2000.

Decided June 16, 2000.

Sandra G. Roland, Assistant Federal Public Defender, argued the cause for the appellant. A.J. Kramer, Federal Public Defender, was on brief. David A. Howard, Assistant Federal Public Defender, entered an appearance.

Amul R. Thapar, Assistant United States Attorney, argued the cause for the appellee. Wilma A. Lewis, United States Attorney, and John R. Fisher and Roy W. McLeese, III, Assistant United States Attorneys, were on brief.

Before: EDWARDS, Chief Judge, HENDERSON and ROGERS, Circuit Judges.

Opinion for the court filed PER CURIAM.

Concurring opinion filed by Circuit Judge KAREN LeCRAFT HENDERSON.

PER CURIAM:

Appellant Harry Ginyard pleaded guilty to one count of receiving materials depicting a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) and one count of wire fraud in violation of 18 U.S.C. § 1343. In return, the government agreed to a sentence of 18 months' incarceration and $63,464.88 restitution. Ginyard entered his guilty plea pursuant to a written plea agreement within the scope of Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure. The district court provisionally accepted the plea agreement pending review of the presentence report. After reviewing the presentence report the court rejected the proposed prison term but accepted the parties' subsequent oral agreement providing for a 24 month sentence. It then sentenced Ginyard without objection to 24 months' incarceration, $63,464.88 restitution, a $200 special assessment and three years' supervised release. The court also continued its pretrial order restricting Ginyard's computer use and telephone communications during his imprisonment. Ginyard challenges two aspects of his sentence, arguing that the district court violated the Rule 11(e)(1)(C) plea agreement by imposing a term of supervised release not included therein and lacked authority to restrict his computer use and telephone communications in prison. We conclude that although the district court appears to have erred in imposing the term of supervised release, the error was invited and, in any event, does not constitute "plain error" on this record. Additionally, as both parties agree, the district court's restriction on Ginyard's computer and telephone use in prison is beyond its authority and we therefore vacate that portion of the sentence.

## I.

Between 1991 and 1997, Ginyard made contact with various women through inter-

net chat rooms, electronic mail and the telephone. Using several aliases, Ginyard initiated what he falsely represented as "committed relationship[s]" and lied about his background, employment and income. Government's Memorandum Statement of Facts 2 (May 10, 1999). At one point Ginyard was engaged to marry at least two different women and was involved in "serious romantic relationship[s]" with others. Status Call Tr. 5/12/99 at 21. Ginyard took control of each woman's finances for his own financial benefit and forced at least one woman into bankruptcy. Following Ginyard's arrest, the FBI searched Ginyard's computer files and discovered approximately 35 visual images which he had received through an internet chat program depicting a female under the age of 18 years engaged in sexually explicit conduct. On December 8, 1998 Ginyard was indicted on seven counts of wire fraud in violation of 18 U.S.C. § 1343 and eight counts of mail fraud in violation of 18 U.S.C. § 1341. On May 7, 1999 the government filed a superseding information charging Ginyard with receipt of materials depicting a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2).

On May 11, 1999 Ginyard agreed to plead guilty to one count of wire fraud and one count of receiving child pornography. In return the government agreed to a sentence of 18 months' imprisonment and $63,464.88 restitution and agreed to request dismissal of the remaining indictment counts and not to bring additional charges. On that date the parties entered into a written plea agreement under Rule 11(e)(1)(C). The plea agreement recited as a "justifiable reason[ ]" to depart from the sentence Ginyard faced under the United States Sentencing Guidelines (Guidelines) the desire to spare Ginyard's victims the adverse consequences from trial.[1] At the plea hearing held on May 12,

---

1. According to section 6B1.2(c) of the Guidelines (Standards for Acceptance of Plea Agreements (Policy Statement)) the district court "may accept the [Rule 11(e)(1)(C) plea] agree-

1999 the district court informed both parties that it was not "prepared to accept any plea agreement that binds [it] to a sentence of eighteen months." *Id.* at 5. Nevertheless, the district court provisionally accepted the plea agreement pending receipt of the presentence report as allowed under Rule 11(e)(2).

On August 3, 1999, after reviewing the presentence report, the district court rejected the plea agreement, declaring that 18 months' imprisonment did "not protect the public for the maximum period of time that it could be protected for." Sentencing Tr. 8/3/99 at 31. The government then asked whether the district court would be willing to accept the plea if "appellant were willing to be sentenced within a range." *Id.* at 33. Ginyard asked the district court for "some guidance as to what sentence it would be comfortable with." *Id.* at 34–35. The district court responded that it "could in good conscience live with the figure of twenty-four months." *Id.* at 35. The court then recessed the hearing so the parties could negotiate the sentence. After the recess the following exchange occurred:

DEFENSE: Your Honor, Mr. Ginyard is prepared to take a twenty-four month plea, or sentence I should say, and we can see no need to have another hearing. We are prepared to go forward at this time.

COURT: And does the government agree to that as well?

PROSECUTOR: Yes, Your Honor.

COURT: Mr. Howard, I think under the Rules of Criminal Procedure your client has the right to speak, although given the agreements I am not sure that anything can change. But just to make sure that the Rules are completely complied with, if he wishes to speak I do believe that he has the right under the Federal Rules.

DEFENSE: We decline, Your Honor.

COURT: The sentence in this case will be a sentence of twenty-four months in custody.

DEFENSE: Should he come forward, Your Honor?

. . . .

COURT: Yes, he should. I am sorry. Twenty-four months in custody. There will be a period of supervised release of three years. There will be a special assessment of $200. There will be restitution, and this is, I believe, under the plea agreement as well, of $63,464.88, and the probation department will have to work out the details of the restitution.

*Id.* at 36–37. The court also continued the pretrial order which prohibited Ginyard from using computers and allowed him, while imprisoned, telephone contact with family members and counsel only. In addition, the court prohibited Ginyard during supervised release from having contact with any of his victims or entering an internet chatroom and allowed him to use a computer only for professional real estate purposes. Ginyard made no objection below to any aspect of his sentence. He now appeals the supervised release component of his sentence, claiming that it is *aliunde* the plea agreement, as well as the computer and telephone restrictions during imprisonment.

## II.

■■■ Ginyard challenges the district court's authority to vary from the provisions of the Rule 11(e)(1)(C) plea agreement by imposing a term of supervised release in addition to the sentence of imprisonment and restitution specified therein. Because Ginyard failed to object to the imposition of supervised release below, we review for plain error only. *See United States v. Blackwell,* 694 F.2d 1325, 1340 (D.C.Cir.1982) (plain error review of defendant's argument not raised below that dis-

ment if the court is satisfied . . . that . . . the agreed sentence departs from the applicable

guideline range for justifiable reasons."

trict court "breached" plea agreement); *see also United States v. Watley,* 987 F.2d 841, 847 n. 6 (D.C.Cir.1993) (plain error review of district court's unobjected to failure to inform defendant of supervised release prior to accepting plea agreement). A sentencing error is plain "where it is obvious under settled law and would result in grave prejudice or a miscarriage of justice if not corrected on appeal." *United States v. Drew,* 200 F.3d 871, 879 (D.C.Cir. 2000) (internal quotation marks and quotation omitted).

Ginyard entered into the plea agreement pursuant to Rule 11(e)(1)(C), which provides that the government "agree that a specific sentence or sentencing range is the appropriate disposition of the case."[2] The plea agreement "is binding on the court once it is accepted by the court." Fed.R.Crim.P. 11(e)(1)(C).

 The court may accept or reject a Rule 11(e)(1)(C) plea agreement or "may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report." Fed.R.Crim.P. 11(e)(2). The court may not, however, "participate in any discussions between the parties concerning any such plea agreement." Fed.R.Crim.P. 11(e)(1)(C). At the May 12 plea hearing the district court deferred its decision to accept the plea agreement pending review of the presentence report. At the August 3 sentencing hearing, after reviewing the presentence report, the district court rejected the plea agreement. *See* Sentencing Tr. 8/3/99 at 32. The district court then allowed the parties to confer on an alternate sentence of imprisonment and

eventually Ginyard stated that he was "prepared to take [*sic*] a twenty-four month plea." *Id.* at 36.[3] Had it been clear that the parties were tendering a plea that specified only a 24-month term of incarceration, the district court's imposition of a term of supervised release would have been error.[4] Supervised release is punishment, *see United States v. Gilchrist,* 130 F.3d 1131, 1133 (3d Cir.1997) (quoting *United States v. Dozier,* 119 F.3d 239 (3d Cir.1997)), and therefore part of the "sentence" within the meaning of Rule 11(e)(1)(C). *See United States v. Jamison,* 934 F.2d 371, 373–74 (D.C.Cir.1991) ("sentence" in statute authorizing imposition of supervised release, 18 U.S.C. § 3583(a), includes both imprisonment and supervised release). Rule 11(e)(1)(C) also makes clear that the agreed-to sentence constitutes the "disposition" of the case, precluding the imposition of additional punishment. Thus, if supervised release is not specified as part of the sentence in a Rule 11(e)(1)(C) plea agreement, it cannot be imposed.

Here, however, the district court's acceptance of the 24-month term was ambiguous. On the one hand, the district court could have understood the parties to have agreed to a guideline sentence that included the normally-attendant term of supervised release. *See* U.S.S.G. § 5D1.1(a). Under this interpretation of the court's acceptance, it did not breach the plea agreement.

 On the other hand, the record provides some support for Ginyard's view that the parties had not agreed to a term of supervised release when they amended

---

**2.** Rule 11(e)(1)(C) was amended effective December 1, 1999 while this appeal was pending. We quote from and apply the rule as amended since our holding would be the same under either version. *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 275 & n. 29, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

**3.** The district court correctly indicated that its participation in arriving at an acceptable sentence under the plea agreement was "an un-

comfortable conversation" in light of Rule 11(e)(1). Sentencing Tr. 8/3/99 at 35.

**4.** The government's failure to include both the supervised release and the special assessment components, *see* U.S.S.G. § 5E1.3 & Application Note 2A; 18 U.S.C. § 3013, in the plea agreement, which it acknowledged at oral argument is standard procedure, is troubling and may have led the district court astray in the first instance.

the Rule 11(e)(1)(C) plea agreement, and under this interpretation of the court's acceptance, it did breach the agreement by imposing such a term as part of the sentence. Because the record is ambiguous on this point, we cannot say the district court plainly erred. Assuming, however, that the district court erroneously amended the plea agreement by varying the terms without the parties' agreement, Ginyard invited the error when he solicited the district court's opinion on an acceptable sentence and then negotiated, through counsel, the restrictions of supervised release. *See* Sentencing Tr. 8/3/99 at 34–35 (DEFENSE: "I don't know if the court feels comfortable giving us some guidance as to what sentence it would be comfortable with, but otherwise I guess it would be—it would come down to sort of a bidding process where we come back and say twenty months, or twenty-two, something of that nature. So if the court could provide some guidance."); *id.* at 43 (DEFENSE: "And if the court were maybe to restrict [Ginyard's] use of the internet to matters related to real estate during that period [supervised release], then that may be a reasonable middle ground."). If a defendant invites error by the district court, he is "barred from complaining about it on appeal." *United States v. Harrison,* 103 F.3d 986, 992 (D.C.Cir.1997); *cf. United States v. Wiggins,* 530 F.2d 1018, 1020 (D.C.Cir.1976). More important, Ginyard failed to object to the district court's imposition of supervised release, and, assuming the district court erred in doing so, it did not plainly err.

■ Finally, both parties agree that the district court lacked statutory authority to restrict Ginyard's computer and telephone use during confinement. *See* Appellee's Br. 21–22 & n.11; Reply Br. 11 n.5; *United States v. Sotelo,* 94 F.3d 1037, 1040–41 (7th Cir.1996) ("[B]ecause there is no federal law authorizing an incarceration-communication restriction as part of a sen-

tence ordered by a district court ..., the district court lacked the authority to impose the restriction."). Accordingly, we vacate the portion of the sentence imposing restrictions on Ginyard's telephone and computer use in prison. In all other respects, Ginyard's sentence is affirmed.

*So ordered.*

### KAREN LeCRAFT HENDERSON, Circuit Judge, concurring in part:

While I agree that the district court did not plainly err in imposing supervised release, I do not believe that the error was invited. *See In re Sealed Case,* 108 F.3d 372, 374 (D.C.Cir.1997) ("Appellant may have acquiesced in what he now claims is error, but he did not invite it.") (citing *United States v. Harrison,* 103 F.3d 986, 992 (D.C.Cir.1997)). After the district court rejected the plea agreement, Ginyard did seek its input in the plea discussions. In response, the district court reluctantly, but nevertheless erroneously,[1] declared that it "could in good conscience live with a [sentence] of twenty-four months." Sentencing Tr. 8/3/99 at 35. This error (which *was* invited), however, did not extend to the district court's separate imposition of supervised release after Ginyard agreed to the 24–month term of imprisonment. *See id.* at 36. Once the district court imposed supervised release, Ginyard did not object but, again, his conduct more resembled acquiescence than invitation.

Whether the district court erred at all depends, in my opinion, not on the ambiguous nature of the district court's acceptance of the plea agreement as my colleagues believe, *see Per Curiam* Op. 6–7, but on the wording of Rule 11(e)(1)(C). While I agree that our holding is "the same under either version," *id.* at 6 n. 2, that is so only because our review is for plain error. But I do not agree that the amended version has not effected a change

---

**1.** *See* Fed.R.Crim.P. 11(e)(1)(C) ("The court shall not participate in any discussions be-

tween the parties concerning any such plea agreement.").

that *could,* depending on the language of the plea agreement, change the results on appeal.

Under the unamended version of Rule 11(e)(1)(C) the government may agree "that a specific sentence is the appropriate disposition of the case." This is the version under which Ginyard was sentenced and, as we have recognized, *see United States v. Jamison,* 934 F.2d 371, 373–74 (D.C.Cir.1991), because supervised release is part of the sentence, the district court's acceptance of Ginyard's plea agreement (as amended) bound the court to its terms. *See United States v. Blackwell,* 694 F.2d 1325 (D.C.Cir.1982). I therefore agree with my colleagues that, "assuming the district court erred ..., it did not plainly err," *Per Curiam* Op. 8, and I therefore join in affirming the district court.

But Rule 11(e)(1)(C) now allows the parties to agree instead that a "particular provision of the Sentencing Guidelines ... is or is not applicable to the case."[2] With respect to this language, the advisory committee notes state, "the government and defense ... actually agree[ ] on what amounts to an appropriate sentence or ... *agree[ ] to one of the specified components.*" Fed.R.Crim.P. 11(e) advisory committee's note (1999) (emphasis added). If the plea agreement fails to address a specific provision of the Guidelines, particularly a mandatory one, the district court's acceptance of a Rule 11(e)(1)(C) plea agreement would not, in my view, prohibit it from imposing the unaddressed "component" of the sentence.

The Guidelines require a district court to "order a term of supervised release to follow imprisonment when a sentence of imprisonment of more than one year is imposed." U.S.S.G. § 5D1.1. The district court may depart from the mandate of section 5D1.1 only if, *inter alia,* supervised release is not required "to protect the public welfare." *Id.,* Application Note 1.[3] Here the district court made no finding that supervised release was not necessary to protect the public welfare. *Cf. United States v. Atkins,* 116 F.3d 1566, 1572 n. 8 (D.C.Cir.1997) ("[A] departure from the applicable Guidelines *range* must be supported by 'specific reasons explaining the extent of [the] departure.'") (quoting *United States v. Perkins,* 963 F.2d 1523, 1528 (D.C.Cir.1992)) (citation omitted) (emphasis added).[4] On the contrary, the fact that the court restricted Ginyard's computer use and contact with his victims during supervised release manifests that it thought supervised release was necessary. With no reason not to, the district court would have been required to impose supervised release. Therefore, had Ginyard been sentenced under Rule 11(e)(1)(C) as amended, I believe that the district court's imposition of supervised release after imprisonment would not have been error.[5]

---

2. Rule 11(e)(1)(C) as amended also allows the government to "agree that a specific ... sentencing *range* is the appropriate disposition of the case" (amended language emphasized). "Range" refers, in my opinion, only to the term of imprisonment. *See* U.S.S.G. § 1B1.1(g) (Application Instruction to "determine the guideline *range* ... that corresponds to the offense level and criminal history category") & (h) (Application Instruction to determine "[f]or the particular guideline *range,* ... the sentencing requirements and options related to ... supervision conditions"); U.S.S.G. § 5A, Application Note 1 ("The intersection of the Offense Level and Criminal history Category displays the *Guideline Range in months of imprisonment.*") (emphases add-

ed). A supervised release departure, however, is governed by section 5D1.1, Application Note 1.

3. Application Note 1 includes four other bases on which to decline to impose supervised release, none of which is applicable here.

4. The *Atkins* and *Perkins* holdings involved departures from the Guidelines "range," that is, the applicable imprisonment period. *See supra* n. 2.

5. Interestingly, Ginyard did not challenge the district court's failure to advise him of the mandatory supervised release term before ac-

cepting his plea. According to the record, the court failed to mention both supervised release and the mandatory $100 assessment per felony conviction before the court's conditional acceptance at the May 12 plea hearing. *See* Fed.R.Crim.P. 11(c)(1) ("Before accepting a plea ..., the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands ... that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances."); *see also United States v. Watley*, 987 F.2d 841, 847 n. 6 (D.C.Cir.1993) ("The government concedes that the district court entirely overlooked one Rule 11(c) specification [before accepting guilty plea]: that the court did not inform Watley of the supervised release term he might receive."). Had the two conditions been set out in the plea agreement, *see Per Curiam* Op. at 7 n.4, the court a might well have recited them to Ginyard before conditionally accepting his guilty plea.